**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

NADINE PELLEGRINO AND   :
HARRY WALDMAN,     :
           :
    Plaintiffs,  : CIVIL ACTION
           :
  v.       : NO. 09-5505
           :
UNITED STATES OF AMERICA  :
TRANSPORTATION SECURITY  :
ADMINISTRATION, et. al.,  :
           :
    Defendants.  :

**MEMORANDUM**

JOYNER, J.            **MAY 6, 2015**

  Before the Court are the Parties' submissions relating to Ms. Pellegrino's May 28, 2009 FOIA request (Doc. Nos. 198, 212, 221) as well as withheld documents submitted for this Court's *in camera* review.

**I. BACKGROUND**

  This issue is a small portion of Plaintiff Pelligrino's years-long dispute with the TSA arising from an altercation at the Philadelphia airport in 2006. As part of her investigation of the incident, Ms. Pellegrino submitted a FOIA request to the TSA seeking "copies of all records, reports, follow-up reports, and similar material from any TSA office containing her name (or Nadine Pellegrino Waldman) initiated by any and all TSA officers, officials, investigators, and personnel." Declaration of Kevin J. Janet, Doc. No. 89, at 2. The TSA identified 375 pages responsive

to her request, and ultimately released 285 of those pages. Id. at 2-3. The 90 pages that were withheld are the subject of the Parties' submissions and this decision.

This issue first came before the Court in Ms. Pellegrino's Complaint, which alleged, among other things, that the TSA had not provided any documents in response to her May 28, 2009 FOIA request. See Complaint, Doc. No. 1, at ¶¶ 55, 93-96. After the 285 pages were later released, the TSA moved to dismiss the FOIA claim per Rule 12(b)(6). See Doc. No. 40 at 32. We did not dismiss the claim, but instead directed the TSA to submit a Vaughn Index explaining the legal bases for the withheld pages. Doc. No. 77 at 39. The Index was filed in April of 2012 along with an explanatory declaration from Kevin Janet, a TSA attorney who played a large part in the document collection and review. See Doc. No. 89. In large part, the Index and Declaration claimed that the 90 pages were withheld because they "reflected the essential core of the [TSA] attorneys' preparatory efforts," and were thus protected attorney work product. See Doc. No. 212 at 4.

Apart from a small non-substantive Motion in April of 2012 (Doc. No. 92), neither party addressed this issue again until Plaintiff moved for reconsideration of our summary judgment decision. See Doc. Nos. 182, 188. That motion did not address TSA's legal bases for the withholdings, but rather expressed Ms. Pellegrino's general dissatisfaction with both the released and

2

withheld documents. Doc. No. 188 at 122-23. In deciding the
Motion we granted Plaintiff leave to file a brief further
explaining her position on the withheld documents. See Doc. No.
195 at 22-23.

After the parties had fully briefed their positions, we
determined that we could not make a decision on Plaintiff's claim
without reviewing the 90 withheld pages *in camera*. See Doc. No.
223. Pursuant to our order, the TSA provided the Court with
copies of the withheld pages. We now address whether the
withholdings were proper.

## II. STANDARD OF REVIEW

The Freedom of Information Act requires federal agencies
"upon 'any request,' to make records 'promptly available to any
person.'" Am. Civil Liberties Union of N.J. v. F.B.I., 733 F.3d
526, 531 (3d Cir. 2013) (quoting 5 U.S.C. § 552(a)(3)(A)).
However, "[r]ecognizing that the public's right to know may be
outweighed by the government's need to keep certain information
confidential, Congress created nine exemptions" to the
government's disclosure obligations. Cozen O'Connor v. U.S. Dep't
of Treasury, 570 F. Supp. 2d 749, 764 (E.D. Pa. 2008). These
exemptions are codified at 5 U.S.C. §§ 552(b)(1)-(9).

As the primary purpose of the FOIA is "to facilitate public
access to Government documents ... [t]here is a presumption in
favor of disclosure." Sheet Metal Workers Int'l Ass'n, Local

Union No. 19 v. U.S. Dep't of Veterans Affairs, 135 F.3d 891, 897
(3d Cir. 1998) (internal quotation marks omitted). As a result,
"[j]udicial review of an agency's decision to withhold documents
is different from the review of other agency decisions. ... The
agency's decision is reviewed *de novo*, and the burden is on the
agency to prove that it properly withheld the records." Cozen,
570 F. Supp. 2d at 764-65 (footnote omitted). Given the
presumption in favor of disclosure, the nine exemptions must be
"construed narrowly." Id. at 765-66. That being said, "[i]f the
agency demonstrates that the information is exempt, it is
entitled to summary judgment in its favor." Id.

**III. Discussion**

   Our review of the Parties' submissions will proceed as
follows: first, we address Ms. Pellegrino's broad challenges to
the TSA's ability to withhold documents at all. We then address
the TSA's argument that the entire document set is exempt from
production as attorney work product. As we find this argument to
be unpersuasive, we then examine the documents themselves and
determine whether they can be withheld on alternate grounds. In
this latter section we also address any specific challenges that
Ms. Pellegrino has raised to individual documents.

   **A. Plaintiff's Challenges**

   Ms. Pellegrino's briefing spends little time challenging the
individual document descriptions in the TSA's Vaughn Index and

instead issues broader challenges to the TSA's ability to withhold these documents at all. Though her briefing is far from clear, we have endeavored to parse out each of these challenges and will address them in turn.

### 1. Crime-Fraud Exception

Ms. Pellegrino's primary challenge is under the crime-fraud exception, a well-recognized exception to both the attorney-client privilege and the work product doctrine. <u>See generally</u> <u>In re Grand Jury Proceedings</u>, 604 F.2d 798, 802 (3d Cir. 1979). The logic underlying the exception in both areas is the same: "The work product privilege is perverted if it is used to further illegal activities as is the attorney-client privilege, ... there are no overpowering considerations in either situation that would justify the shielding of evidence that aids continuing or future criminal activity." <u>Id.</u> Thus records are not protected if the party seeking to invoke the exception can show that "(1) the client was committing or intending to commit a fraud or crime, and (2) the attorney-client communications [or work product documents] were in furtherance of that alleged crime or fraud." <u>In re Grand Jury Subpoena</u>, 745 F.3d 681, 687 (3d Cir. 2014) (quotation marks omitted).

To sum up many pages of her briefing — Ms. Pellegrino alleges that TSA employees, TSA attorneys, and attorneys from the Pennsylvania District Attorney's Office were involved in a

5

variety of criminal conspiracies to maliciously prosecute her and cover up their wrongdoing. See, e.g., Doc. No. 198 at 2, 3, 8, 9, 12, 16. As a result, she argues that the TSA should not be entitled to withhold any documents.

"Because it is often difficult or impossible to prove that the exception applies without delving into the communications themselves ... courts may use *in camera* review to establish [its] applicability." In re Grand Jury Subpoena, 745 F.3d at 687. While courts generally require an initial threshold showing by the party seeking *in camera* review, see id. at 688, we need not address that here as we have already reviewed the documents to assess the propriety of the withholdings. We can thus directly address whether the crime-fraud exception invalidates the defendants' privilege assertions.

After a review of the documents, we find no evidence that any defendant or associated party "was committing or intending to commit a fraud or crime." Id. at 687. Plaintiff's briefing paints an unsavory picture of a variety of crimes allegedly committed by the defendants, but there is nothing in the documents to substantiate these claims. Indeed even if we were to assume that Plaintiff's allegations were accurate, the crime-fraud exception would only undermine the TSA's privilege assertions where the communications themselves "were in furtherance of that alleged crime or fraud." Id. Nothing in these documents even remotely

6

meets that standard. As such, the exception cannot apply.

**2. Attorney Misconduct Exception**

Plaintiff also invokes an alternate (yet apparently similar) theory under the so-called "attorney misconduct exception." See Doc. No. 221 at 2 & n. 7. In essence, Plaintiff claims that the government attorneys here acted improperly and thus any work product generated by them cannot be protected. Notably, Plaintiff fails to cite any authority showing that this exception even exists, let alone whether the Third Circuit has recognized it.

In our search of the caselaw, we did find cases from other circuits that recognized an exception akin to that which the Plaintiff purports to rely on. For instance, in Moody v. I.R.S. the D.C. Circuit stated that "in some circumstances, a lawyer's unprofessional behavior may vitiate the work product privilege" because "[a]n attorney should not be able to exploit the privilege for ends outside of and antithetical to the adversary system." 654 F.2d 795, 800 (D.C. Cir. 1981). The Third Circuit has shown some support for this logic, though it is far from clear whether this exception exists in this Circuit. See In re Impounded Case (Law Firm), 879 F.2d 1211, 1213-14 (3d Cir. 1989).

However, even if we were to assume the existence of this exception, we have already reviewed the withheld documents and found no evidence that the attorneys acted improperly. Thus, as with the crime-fraud exception, the attorney misconduct exception

7

cannot invalidate the TSA's work product claims.

### 3. Inadequate Search

Plaintiff also alleges that the search conducted by the TSA's FOIA office was inadequate. In support of this claim she points to several categories of responsive documents that she believes should have been retrieved and produced, but ultimately were not. For instance, she notes that "glaringly missing are any and all electronic records of the digital photos illegally taken" of Plaintiff's driver's license, as well as the "TSA's 7-29-06 Screening Incident Report" apparently referenced by a TSA employee during a deposition. Doc. No. 221 at 4. Plaintiff's briefing goes on to catalog a myriad of other similar records which she believes to exist but were never produced. See id. at 4-6.

To prevail in a FOIA dispute, "the agency must show that its search was reasonably calculated to uncover relevant documents." Cozen, 570 F. Supp. 2d at 766 (citing Morley v. CIA, 508 F.3d 1108, 1114 (D.C. Cir. 2007)). The requesting party, on the other hand, can prevail by "producing evidence that raises a substantial doubt that the search was adequate." Id. (citing Valencia-Lucena v. U.S. Coast Guard, 180 F.3d 321, 326 (D.C. Cir. 1999)). There is no specific procedure that must be followed for a FOIA search to be deemed "adequate"; rather, "the search must be adequate enough to reasonably assure that all files likely to

8

contain the requested information have been searched." Id. The proper inquiry does not focus on "whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*." Abdelfattah v. U.S. Dep't of Homeland Sec., 488 F.3d 178, 182 (3d Cir. 2007) (emphasis in original) (internal quotation marks omitted). An agency can show that its search was adequate by submitting an affidavit that "(1) contain[s] reasonable detail; (2) set[s] forth the search terms used; (3) describe[s] the type of search performed; and (4) confirm[s] that all files likely to contain responsive material were searched." Cozen, 570 F. Supp. 2d at 766.

Here, the TSA's affidavit does not provide sufficient information to demonstrate that its search was adequate. The affidavit (located at Doc. No. 212-1) states that TSA's "FOIA Branch tasked several TSA program offices to conduct a search for responsive records." Doc. No. 212-1 at 3 of 5. These program offices included (1) TSA's Executive Secretariat, (2) TSA's Claims Management Branch, (3) TSA's Office of Chief Counsel, (4) TSA's Office of Civil Rights and Liberties, and (5) the Philadelphia International Airport. Id. at 3-4 of 5. The affidavit continues: "When each of the above units was tasked, it received a tasking form and copy of Ms. Pellegrino's requests and was asked to search for any identifying records." Id. at 4 of 5.

Beyond stating that the TSA outsourced the records search to these offices, the affidavit contains no actual information on how these searches were conducted. There is no information about what the tasking forms said, what records were searched, what search terms were used, or what procedures were followed. Additionally, there is no averment from the affiant that "all files likely to contain responsive material were searched." Cozen, 570 F. Supp. 2d at 766. This is insufficient to meet the TSA's burden.

At present, with only the agency's deficient affidavit before us, we cannot make a decision as to whether the search was adequate. As a result, we will require the TSA to provide us with a more-detailed affidavit that meets its legal duty. Plaintiff will also be provided with the opportunity to present a written challenge to the updated affidavit. After receiving these submissions, we will make a final decision on the adequacy of the search.[1]

**B. The Withheld Documents**

Though we have determined that the TSA has not provided sufficient information to meet its adequate-search burden, we will still address whether the documents produced to the Court

---

[1] Plaintiff also argues that the search was conducted in bad faith. See Doc. No. 198 at 4. While this is a proper avenue for challenging the adequacy of a FOIA search, see generally Cozen, 570 F. Supp. 2d at 766, it would be premature to analyze this argument at this time as we are postponing judgment on the adequacy issue. Plaintiff is welcome to present more in-depth arguments regarding her bad faith claims in her response to the TSA's updated affidavit.

for *in camera* review were properly withheld. To make the analysis more understandable, we have broken the document set into several parts, based largely on the TSA's claimed protection for the documents in question.

**1. Exemption 5**

Exemption 5 allows an agency to shield from production any "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). "To qualify, a document must thus satisfy two conditions: its source must be a Government agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." Dep't of Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8 (2001). The latter condition is understood to encompass the attorney-client privilege, the work product doctrine, and the deliberative process privilege. See Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 862 (D.C. Cir. 1980). The TSA has asserted each of these sources of protection, and we will address each in turn.

**a. Work Product**

The TSA's primary basis for withholding the documents is its claim that they are protected by the work product doctrine. That doctrine is codified in Federal Rule of Civil Procedure 26(b)(3),

11

which states that "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." The purpose of the doctrine is to shelter "'the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case.'" In re Grand Jury (Impounded), 138 F.3d 978, 981 (3d Cir. 1998) (quoting U.S. v. Nobles, 422 U.S. 225, 238 (1975)). "The privilege thus promotes the adversarial system by protecting the confidential nature of materials prepared by attorneys in anticipation of litigation and 'enabl[es] attorneys to prepare cases without fear that their work product will be used against their clients.'" Id. (quoting Westinghouse Elec. Corp. v. Republic of the Philippines, 951 F.2d 1414, 1428 (3d Cir. 1991)).

The TSA has asserted a global claim of work product protection over all the withheld documents because the documents were apparently retrieved from "a compendium selected by TSA counsel who were monitoring Plaintiff's criminal prosecution." Doc. No. 212 at 6-7. The agency claims that the documents were collected "with the express expectation that they may prove useful at the trial's conclusion — either because TSA would then proceed with a civil enforcement action, or because a verdict in Plaintiff's favor would be the basis for a future civil lawsuit." Id. at 7. In other words, the TSA claims that all the documents

are protected work product because they were *collected* in anticipation of litigation.

In support of this broad withholding, the TSA cites to the Third Circuit's decision in Sporck v. Peil, 759 F.2d 312 (3d Cir. 1985). The central question in that matter was whether a litigant could compel disclosure of a folder of documents collected by defendant-petitioner Sporck's counsel while preparing for a deposition. Sporck argued that while the individual documents themselves were not protected by the work product doctrine, the folder was, as "the selection process itself represents defense counsel's mental impressions and legal opinions as to how the evidence in the documents relates to the issues and defenses in the litigation." Id. at 315. The Third Circuit agreed, holding that "the selection and compilation of documents by counsel in this case in preparation for pretrial discovery falls within the highly-protected category of opinion work product." Id. at 316.

The TSA's reliance on Sporck is misplaced. In that case, the individual documents themselves were not work product and had already been released as part of a larger document production. Id. at 315. Thus the production of the folder would have only served to reveal what documents (from among the thousands produced in the matter) the attorney found to be particularly important. Id. Such a production would have invariably run afoul

13

of the underlying purposes of the work product doctrine.

Here, the documents in question are essentially from a TSA attorney's case file for this matter. Unlike Sporck, none of these documents has been produced, and most have independent bases for FOIA exemptions. Additionally, there is no indication — from either the TSA's briefing or our review of the documents — that anything about the selection or grouping of these documents would reveal that attorney's mental processes.[2] Instead, this appears to just be a collection of documents that happened to be in the possession of an attorney. The mere fact that an attorney holds a document cannot, by itself, be the basis for a valid work product claim. See, e.g., Vitalo v. Cabot Corp., 212 F.R.D. 478, 479 (E.D. Pa. 2002). Thus we reject the TSA's global assertion of work product protection over the documents.

But this does not mean that the documents are not protected at all. In fact, the vast majority of the documents are themselves attorney work product because they were *created* in anticipation of litigation. These documents consist of attorneys' opinions about the merits of claims, draft letters showing attorney edits, email exchanges between TSA attorneys discussing the case, communications between TSA attorneys and local

---

[2] In fact, given that the TSA has already provided the Plaintiff with an index stating what the documents are, any information that could be gleaned from their selection has already been revealed. This was exactly the type of information that the petitioners in Sporck sought to protect.

prosecutors,[3] and attorneys' notes. The following pages
(identified by their Bates number ranges, and ordered by their
placement in the TSA's Vaughn index) were withheld properly:

- 77-79
- 178
- 274
- 233-35
- 270-71
- 278
- 345
- 346-47
- 312-13
- 315
- 323-24
- 224
- 226
- 227
- 179-81
- 165-69
- 372
- 275-76
- 339-40
- 316-17
- 325
- 344
- 326-29
- 348
- 112-15
- 161-63
- 187-212
- 264

### b. Attorney-Client Privilege

"The attorney-client privilege protects communications
between attorneys and clients from compelled disclosure." In re

---

[3] These communications did not waive the protection of the work product
doctrine because the TSA attorneys and the local prosecutors shared a common
legal interest. See generally In re Teleglobe Commc'ns Corp., 493 F.3d 345,
363-66 (3d Cir. 2007) ("[T]he community-of-interest privilege allows attorneys
representing different clients with similar legal interests to share
information without having to disclose it to others. It applies in civil and
criminal litigation, and even in purely transactional contexts.").

Teleglobe Commc'ns Corp., 493 F.3d 345, 359 (3d Cir. 2007). In
the Third Circuit, the privilege applies to: (1) communications
(2) between privileged persons (3) made in confidence (4) for the
purpose of obtaining or providing legal counsel. See id.
"'Privileged persons' include the client, the attorney(s), and
any of their agents that help facilitate attorney-client
communications or the legal representation." Id. The Supreme
Court has held that "[t]he objectives of the attorney-client
privilege apply to governmental clients." United States v.
Jicarilla Apache Nation, 131 S. Ct. 2313, 2320 (2011). Thus,
"[u]nless applicable law provides otherwise, the Government may
invoke the attorney-client privilege in civil litigation to
protect confidential communications between Government officials
and Government attorneys." Id. at 2321; see also Restatement
(Third) of Law Governing Lawyers § 74 (2000).

     Here, there are five documents (bates ranges 218-19, 262-63,
357-58, 361-62, and 307-08) the TSA claims are protected from
disclosure solely because of the attorney-client privilege. Each
document is a legal memorandum from a TSA attorney to a TSA
employee providing legal counsel related to the employees'
testimony in Ms. Pellegrino's state criminal trial. Put simply,
the communications were from an attorney (TSA field counsel) to
clients (TSA employees) providing confidential legal advice. As
such, they qualify for the attorney-client privilege and were

properly withheld.

### c. Deliberative Process Privilege

The TSA also claims that many of the withheld documents are protected from disclosure by the deliberative process privilege. Of these, only one does not otherwise qualify for protection under either the work product doctrine or the attorney-client privilege - bates number 84.

"The deliberative process privilege permits the government to withhold documents containing 'confidential deliberations of law or policymaking, reflecting opinions, recommendations or advice.'" Redland Soccer Club, Inc. v. Dep't of Army of U.S., 55 F.3d 827, 853 (3d Cir. 1995) (quoting In re Grand Jury, 821 F.2d 946, 959 (3d Cir. 1987)). "'[T]he ultimate purpose of this long-recognized privilege is to prevent injury to the quality of agency decisions.'" Id. at 854 (quoting NLRB v. Sears Roebuck & Co., 421 U.S. 132, 151 (1975)). "It recognizes 'that were agencies forced to operate in a fishbowl, the frank exchange of ideas and opinions would cease and the quality of administrative decisions would consequently suffer.'" Id. (quoting First Eastern Corp. v. Mainwaring, 21 F.3d 465, 468 (D.C. Cir. 1994)).

"Two requirements are essential to the deliberative process privilege: the material must be predecisional and it must be deliberative." In re Sealed Case, 121 F.3d 729, 737 (D.C. Cir. 1997). A document is "predecisional" when it "was generated

17

before the adoption of an agency policy," and is "deliberative" when "it reflects the give-and-take of the consultative process." Coastal States, 617 F.2d at 866.

The lone document in question here is described by the TSA as an "EIR Offical Recommended Action form reflecting investigating and reviewing officials' views of proposed civil enforcement action." Doc. No. 89 at 13 of 24. The TSA claims that the document qualifies for the privilege because it "reflect[s] recommended agency action on prospective administrative civil enforcement action." Id. These descriptions overstate the content of the document. It merely shows the officials' concurrence with a recommended action, which they indicated by circling the word "concur" and writing their initials. Nothing in the document reflects or reveals anything about the agency officials' thought processes or discussions that led to their decision. In fact there is essentially nothing of substance in the document at all. As a result, the document is not deliberative for purposes of the privilege and cannot be withheld.[4] See, e.g., Coastal States, 617 F.2d at 869 (finding that documents did not qualify for the

---

[4] At one point in her voluminous briefing Plaintiff mentions that the documents cannot be withheld because of the "Government Misconduct Exception." See Doc. No. 221 at 2 & n. 6. The source of this limited exception is a 1997 D.C. Circuit decision which stated that the deliberative process privilege "disappears altogether when there is any reason to believe government misconduct occurred." In re Sealed Case, 121 F.3d 729, 746 (D.C. Cir. 1997). As we have found that the deliberative process privilege does not apply to this document, we need not address whether this exception applies here. Contrary to Plaintiff's apparent belief, this exception has no application beyond the deliberative process privilege.

privilege where they did not "contain subjective, personal thoughts on a subject, ... discuss the wisdom or merits of a particular agency policy, or recommend new agency policy.").

**2. Exemption 6**

"Exemption 6 of the FOIA exempts from disclosure 'personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy.'" Berger v. I.R.S., 288 F. App'x 829, 832 (3d Cir. 2008)(quoting 5 U.S.C. § 552(b)(6)). "To determine whether the exemption applies, courts balance the public interest in disclosure against the privacy interest protected by the exemption." Id. (citing Sheet Metal Workers Int'l Assn., Local Union No. 19 v. U.S. Dep't of Veterans Affairs, 135 F.3d 891, 897 (3d Cir. 1998)). "There is a presumption in favor of disclosure, and the agency has the burden of proving that an exemption applies." Id.

The TSA has used Exemption 6 broadly to withhold the names and identifying information of TSA employees. Ms. Pellegrino has challenged the application of exemption 6 because the documents in question here are not "'medical records' ... 'personnel information' or 'similar records.'" Doc. No. 198 at ¶ 36. She is correct in regards to the first two points, but courts often take a very broad view in regards to what is considered a "similar record." In most situations, any personal information can qualify. See, e.g., Forest Guardians v. U.S. Fed. Emergency Mgmt.

19

Agency, 410 F.3d 1214, 1217 (10th Cir. 2005) ("'Similar files' under Exemption 6 has a 'broad, rather than a narrow, meaning' and encompasses all information that 'applies to a particular individual.'") (quoting U.S. Dep't of State v. Washington Post Co., 456 U.S. 595, 600-02 (1982)). Indeed, the central concern is not what type of record is involved, but rather the nature of the privacy interest asserted by the individual. See Berger, 288 Fed. App'x at 832-33. As noted above, this interest must be balanced against the public's interest in disclosure.

The privacy interest at stake here is the TSA employees' right to keep their identities — and their connection to this matter — away from public eyes. Given the nature of Plaintiff's allegations regarding criminal conduct perpetrated by TSA employees, it is entirely reasonable for the employees to not want their identities disclosed in this context. In similar situations, other courts have found such privacy interests to be legitimate. See, e.g., Trentadue v. Integrity Comm., 501 F.3d 1215, 1233-34 (10th Cir. 2007) (finding that low-level government employees had a privacy interest in keeping their identities concealed, even where those employees committed misconduct); Stern v. F.B.I., 737 F.2d 84, 91-92 (D.C. Cir. 1984) ("[I]ndividuals have a strong interest in not being associated unwarrantedly with alleged criminal activity."). We agree with those holdings.

On the other hand, we cannot conceive of any significant public interest that would be served by revealing the names of the TSA employees. The key question is in this regard is whether disclosure "would serve the 'core purpose of the FOIA,' which is 'contribut[ing] significantly to public understanding *of the operations or activities of the government*.'" U.S. Dep't of Def. v. Fed. Labor Relations Auth., 510 U.S. 487, 495 (1994) (quoting Dep't of Justice v. Reporters Comm. for Freedom of Press, 489 U.S. 749, 775 (1989)) (alteration and emphasis in original). We do not see how the disclosure of employee names here would serve that purpose. In general, the redaction of identifying information about TSA employees would not alter the usefulness of these documents to one who is interested in examining the activities of the agency. See Trentadue, 501 F.3d at 1234 ("Disclosing the names of the employees ... would shed little light on the operation of government.") Disclosure may help Ms. Pellegrino in some way, but it is axiomatic that "the purpose for which the requesting party seeks disclosure is immaterial." See Bibles v. Oregon Natural Desert Ass'n, 519 U.S. 355, 356 (1997) (per curiam). Consequently, we find that the public interest in disclosure is negligible.

Given that the public interest in disclosure is slight, it is outweighed here by the employees' privacy rights. See Forest Guardians, 410 F.3d at 1218 ("If ... the public interest in the

information is 'virtually nonexistent' or 'negligible,' then even a 'very slight privacy interest would suffice to outweigh the relevant public interest.'")(quoting <u>FLRA</u>, 510 U.S. at 500); <u>see also</u> <u>Berger</u>, 288 Fed. App'x at 832-33. As a result, the names and identifying information may remain withheld.

The TSA has withheld one document (bates number 171) based solely on Exemption 6. This document is a cover email without any content that attached a "shift summary" from the date of Plaintiff's altercation with the TSA. The attached summary has already been produced. The sole basis for withholding the cover email is that if the exempt material (i.e., the identities of the sender and recipients) is removed, nothing of substance remains. This is generally correct — there is nothing in the document itself beyond the names of the sender and recipients, the time the message was sent, and the title of the attached summary. However slight their value may be though, the latter two pieces of information are not exempt from production. Thus the document must be produced, though the TSA may redact the exempt information.

### 3. Segregability

Pursuant to 5 U.S.C. § 552(b), "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." Consequently, "[a]n 'agency cannot justify

withholding an entire document simply by showing that it contains some exempt material.'" <u>Abdelfattah v. U.S. Dep't of Homeland Sec.</u>, 488 F.3d 178, 186 (3d Cir. 2007) (quoting <u>Mead Data Central v. U.S. Dep't of Air Force</u>, 566 F.2d 242, 260 (D.C. Cir. 1977)). Instead, as a general matter, "the agency must demonstrate that all reasonably segregable, nonexempt information was released." <u>Id.</u>

However, with respect to documents properly withheld under the work product doctrine, "segregability is not required." <u>Judicial Watch, Inc. v. Dep't of Justice</u>, 432 F.3d 366, 371 (D.C. Cir. 2005). This is because the doctrine "'does not distinguish between factual and deliberative material.'" <u>Id.</u> (quoting <u>Martin v. Office of Special Counsel</u>, 819 F.2d 1181, 1187 (D.C. Cir. 1987)). Thus any document prepared in anticipation of litigation is protected completely, whether it contains an attorney's mental impressions or merely collects facts. <u>Id.</u> Thus we need not undertake a segregability analysis for the majority of the withheld documents as they are fully protected by the work product doctrine.

There are five documents however which we have determined are not work product but were properly withheld pursuant to the attorney-client privilege. Unlike the work product doctrine, this privilege "only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who

communicated with the attorney." <u>Upjohn Co. v. United States</u>, 449
U.S. 383, 395 (1981). Thus to the extent that these documents
contain information other than attorney-client communications,
that material must be produced. As noted previously though, these
five documents are written communications from TSA counsel to TSA
employees providing legal advice. There is nothing on the
withheld pages beyond these communications. As such, there is no
segregable material and they may remain withheld in their
entirety.

## IV. Conclusion

For the reasons given above, we find that while the majority
of the pages produced for this Court's *in camera* review were
properly withheld, the documents bearing bates numbers 84 and 171
were not, and they must be produced. Additionally, we cannot rule
on the adequacy of the TSA's document search given the agency's
deficient affidavit. We will thus require the TSA to provide the
Court and the Plaintiff with a more-detailed affidavit. An Order
follows.